23-1182-cv
*Saraf v. Ebix, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of March, two thousand twenty-four.

PRESENT:
> ROBERT D. SACK,
> DENNY CHIN,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

RAHUL SARAF,

> *Plaintiff-Appellant,*

CHRISTINE MARIE TEIFKE, on behalf of herself and all others similarly situated,

> *Plaintiff,*

> v.                                                           23-1182-cv

EBIX, INC., ROBIN RAINA, STEVEN M. HAMIL,

> *Defendants-Appellees.*

_____

FOR PLAINTIFF-APPELLANT:          MICHAEL DELL'ANGELO, Berger Montague PC, Philadelphia, Pennsylvania.

FOR DEFENDANTS-APPELLEES:  PAUL J. LOCKWOOD (Cliff C. Gardner and Julie E. Cohen, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jesse M. Furman, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on July 17, 2023, is **AFFIRMED** as to Defendants-Appellees Robin Raina and Steven M. Hamil.[1]

Plaintiff-Appellant Rahul Saraf appeals the district court's dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), of his putative class action asserting securities fraud claims against Defendants-Appellees Ebix, Inc., its Chief Executive Officer ("CEO") Raina, and its Chief Financial Officer ("CFO") Hamil (collectively, "Ebix"). In the operative third amended complaint, Saraf alleges that Ebix, a publicly traded software and e-commerce services provider, made material misstatements regarding the effectiveness of its internal controls in its Form 10-Q, filed on November 9, 2020, for the third quarter of 2020, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. Having dismissed, without prejudice, Saraf's second amended complaint for failure to plead scienter, the district court dismissed the

---

[1] On December 17, 2023, Ebix, Inc. filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas. This petition triggered an automatic stay of judicial proceedings against Ebix, Inc. *See* 11 U.S.C. § 362(a); *Ostano Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986) (holding that a bankruptcy petition filed while an appeal was pending prompted an automatic stay of the proceedings, because the action was originally brought against the debtor). But while "[t]he automatic stay can apply to non-debtors, [it] normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003). As we have held, the fact that deciding the non-debtors' appeal would "effectively decid[e] [the debtor's] stayed appeal" is no basis to extend the automatic stay to the non-debtors. *Id*. at 288. We thus stay this appeal only with respect to Ebix, Inc. and will proceed to consider the merits of the appeal with respect to Defendants-Appellees Raina and Hamil. *See id*.

third amended complaint *with* prejudice, finding that Saraf had once again failed to adequately allege that any defendant acted with scienter, as required to state a claim under Sections 10(b) and 20(a) and Rule 10b-5.   We review a dismissal under Rule 12(b)(6) *de novo*, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).   In doing so, we assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"   *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Securities fraud claims must also satisfy the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), which require a complaint to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A). *See ATSI Commc'ns, Inc.*, 493 F.3d at 99.   To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege "that the defendant[s] acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud."[2]   *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation marks and citation omitted).   "Scienter may be established by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud

---

[2]   Scienter is also required to establish liability under Section 20(a) where, as here, the Section 20(a) claim is derivative of the Section 10(b) and Rule 10b-5 claim.   *See, e.g.*, *ATSI Commc'ns, Inc.*, 493 F.3d at 108 (concluding that plaintiff failed to state a claim under Section 20(a) because it failed to adequately allege a primary violation under Section 10(b) and Rule 10b-5).   Moreover, "[w]hen the defendant is a corporate entity, . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

3

or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 177 (2d Cir. 2023) (internal quotation marks and citation omitted). "[T]he inference of scienter [from the alleged facts] must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc.*, 551 U.S. at 324.

On appeal, Saraf argues that the district court applied improper pleading standards when ruling on Ebix's motion to dismiss, and that the third amended complaint establishes a strong inference of scienter by alleging both motive and opportunity to commit fraud and strong circumstantial evidence of conscious misbehavior or recklessness. For the reasons set forth below, we disagree.

"In order to raise a strong inference of scienter through 'motive and opportunity' to defraud, [p]laintiffs must allege that [the defendant corporation] or its officers 'benefitted in some concrete and personal way from the purported fraud.'" *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (quoting *Novak v. Kasaks*, 216 F.3d 300, 307–08 (2d Cir. 2000)). "[I]n the ordinary case, adequate motive ar[i]se[s] from the desire to profit from extensive insider sales." *Novak*, 216 F.3d at 308. However, "[m]otives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *ECA, Loc. 134*, 553 F.3d at 198. Here, Saraf argues that his complaint alleges sufficient motive to misrepresent the effectiveness of Ebix's internal controls, because concealing the material weakness in the financial reporting of its profitable EbixCash subsidiary in India would protect the planned initial public offering ("IPO") of EbixCash, allowing: (1) Ebix to pay certain debts and stave off bankruptcy; (2) Raina to profit from

4

exercising his options in EbixCash; and (3) Raina to increase the value of his ownership of fourteen percent of Ebix's outstanding shares.

These allegations, even when considered collectively, do not adequately plead the requisite scienter. As we have emphasized, plaintiffs cannot "proceed based on motives possessed by virtually all corporate insiders." *Novak*, 216 F.3d at 307. The district court appropriately recognized that "any corporation would be motivated to avoid bankruptcy." *Saraf v. Ebix*, No. 21-CV-1589 (JMF), 2023 WL 4561655, at *6 (S.D.N.Y. July 17, 2023) (alterations adopted) (internal quotation marks and citation omitted). Thus, although Ebix's motive to repay its debts and avoid bankruptcy "will naturally involve benefit to [the] corporation, [it] does not entail *concrete* benefits," because "if scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (alteration adopted) (emphasis added) (internal quotation marks and citations omitted); *see also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996) (holding that the defendant corporation's desire to maintain a high bond or credit rating to maximize the marketability of its debt securities was too generalized to show sufficient motive). Saraf's allegations regarding Raina's motive to protect EbixCash's planned IPO given his ownership of Ebix stock and EbixCash options are likewise insufficient, because Saraf has "not pointed to any specific benefit that would inure to [Raina] that would not be either generalized to all corporate directors or beneficial to all shareholders." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001); *see also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (concluding that the motive to maintain a high stock price to increase executive compensation does not give rise to a strong inference of scienter). Saraf has not alleged that Raina sought to sell any of his stock or

5

exercise any of his options—only that he could benefit financially if EbixCash completed its IPO. This alleged benefit, even considered alongside Ebix's motivation to avoid bankruptcy, is plainly not enough. *See Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004) (concluding that defendants' alleged efforts to inflate and maintain the company's stock price, complete a previously arranged acquisition, and retire company debt were insufficient to demonstrate motive, "[e]ven if the complaint [were] read to say that defendants artificially inflated [the] stock price to increase their personal compensation (by undertaking the cited transactions or otherwise)"); *see also Malin v. XL Cap., Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009) (summary order) ("[H]aving concluded that none of plaintiffs' allegations showed even a weak inference of scienter, there is no logical way that the [d]istrict [c]ourt could then have determined that the combined effect of the allegations would form a *strong* inference of scienter.").

Saraf also fails to plead strong circumstantial evidence of conscious misbehavior or recklessness. Plaintiffs alleging "conscious misbehavior or recklessness . . . must show conscious recklessness—*i.e.*, a state of mind approximating actual intent, and not merely a heightened form of negligence." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015) (internal quotation marks and citation omitted). "Any allegation of conscious misbehavior or recklessness should be viewed holistically and together with the allegations of motive and opportunity to determine whether the complaint supports a strong inference of scienter." *New Eng. Carpenters*, 80 F.4th at 177 (internal quotation marks and citation omitted). However, where, as here, "motive is not apparent, . . . the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142 (internal quotation marks and citation omitted). Here, Saraf argues that Ebix knew or should have known that its internal controls were not effective as of November 9, 2020, the date on which Ebix filed its 2020 Q3 Form 10-Q containing the alleged misstatements,

6

because: (1) Ebix's independent auditor RSM resigned in February 2021 after identifying a material weakness in its evaluation of unusual transactions in the gift card business during the fourth quarter of 2020; (2) Ebix hired a replacement auditor that gave Ebix a clean audit for 2020 without sufficient time or resources to conduct a proper audit; (3) EbixCash filed a draft prospectus in India in March 2022, acknowledging that it would need to maintain and improve the effectiveness of its internal controls as a public company; (4) the short seller Hindenburg Research published a report (the "Hindenburg Report") in June 2022 claiming that a portion of EbixCash's gift card revenue was nonexistent; and (5) Ebix responded to the Hindenburg Report with a "clarification" stating that EbixCash gift cards were sold to corporate clients only.

Even assuming *arguendo* that Ebix's clarification regarding EbixCash's sources of revenue is an admission that Ebix's internal controls were deficient, the events alleged by Saraf—all of which post-date the filing of Ebix's Form 10-Q for the third quarter of 2020—do not provide strong circumstantial evidence as to Ebix's state of mind when the alleged misstatements were made. *See Novak*, 216 F.3d at 309 ("[A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud."). Saraf argues that Raina's and Hamil's positions as CEO and CFO, respectively, mean that they knew or should have known that Ebix's internal controls were ineffective. However, "where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (alteration adopted) (internal quotation marks and citation omitted). Saraf makes no such showing, alleging merely that Raina and Hamil had access to information generally and should have investigated

7

EbixCash's success.[3]   But, as we have held, "[f]raud cannot be inferred simply because [a parent company should] have been more curious or concerned about the activity [of its subsidiary]." *Chill*, 101 F.3d at 270.   In short, Saraf's allegations, whether considered individually or collectively, are insufficient to plead strong circumstantial evidence of conscious misbehavior or recklessness.

As a result of its failure to plead a strong inference of scienter, the third amended complaint fails to state a claim under either Section 10(b) and Rule 10b-5 or Section 20(a).   Therefore, the district court properly dismissed the complaint.[4]

\*          \*          \*

---

[3]   Saraf's allegations regarding the statements of three confidential witnesses also do not give rise to a strong inference that Raina or Hamil knew facts or had access to information making their public statements inaccurate.   Only one of the three confidential witnesses stated that he expressed concerns regarding internal controls and accounting in Ebix's India operations to Ebix executives, namely Hamil.   However, this confidential witness did not have visibility into Ebix's operations or finances in India, and he did not express his concerns to Hamil until he (the confidential witness) resigned in March 2021.

[4]   While this appeal was pending, Saraf filed a motion to remand, arguing that circumstances bearing on its allegations of scienter have changed and that we should vacate and remand to the district court to consider the changed circumstances, or alternatively consider the changed circumstances on appeal.   *See New Eng. Merch. Nat'l Bank v. Iran Power Generation & Transmission Co.*, 646 F.2d 779, 783–84 (2d Cir. 1981) ("Ordinarily, where circumstances have changed between the ruling below and the decision on appeal, the preferred procedure is to remand to give the district court an opportunity to pass on the changed circumstances, unless the new situation demands one result only." (internal quotation marks and citation omitted)).   In particular, Saraf asserts that he can now point to specific documents supporting the inference of scienter, namely:   (1) an August 2023 Public Company Accounting Oversight Board ("PCAOB") order finding that the replacement auditor failed to follow certain PCAOB standards during the 2021 audit of Ebix; (2) reports that Indian government authorities had issued administrative warnings to certain partners with which EbixCash worked or planned to work on its IPO; and (3) court filings in Ebix's now-pending bankruptcy proceedings explaining why the EbixCash IPO did not ultimately take place.   Even assuming *arguendo* that these new documents constitute changed circumstances, "there is no conceivable dispute" that they would have any effect on this case, because, for the reasons discussed *supra*, the documents relate only to events occurring after November 2020, and are again insufficient to establish a strong inference of scienter at the time the alleged misstatements were made.   *Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 223 n.8 (2d Cir. 2006).   We accordingly deny Saraf's motion to remand.

We have considered Saraf's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **AFFIRMED** as to Defendants-Appellees Raina and Hamil.   The appeal is stayed as to Defendant-Appellee Ebix, Inc., pending further order of the Bankruptcy Court or this Court.[5]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5]   Ebix, Inc. shall promptly notify this Court in the event that the Bankruptcy Court grants relief from the Section 362 stay with respect to this appeal or in the event that the stay lapses.   *See Queenie, Ltd.*, 321 F.3d at 291 n.6.